# 23-1095-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

PREBLE-RISH HAITI, S.A.,

*Petitioner-Appellee,*

– v. –

REPUBLIC OF HAITI,

*Respondent-Appellant,*

BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE
AU DÉVELOPPEMENT,

*Respondent.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## RESPONDENT-APPELLANT

BERTRAND MADSEN
MADSEN LAW P.C.
1115 Broadway, 11th Floor
New York, New York 10010
(212) 346-7744

ELIZABETH WOLSTEIN
SAMUEL L. BUTT
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, New York 10004
(212) 344-5400

*Attorneys for Respondent-Appellant*

CP COUNSEL PRESS (800) 4-APPEAL • (324945)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... iii

PRELIMINARY STATEMENT ............................................................... 1

JURISDICTIONAL STATEMENT ........................................................... 4

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................... 5

STATEMENT OF THE CASE .................................................................. 6

    A.    The Contracts Between Preble-Rish And BMPAD ............................ 6

        1.    The Contract Subject Matter And Parties .................................. 6

        2.    The Arbitration Clause ............................................................. 6

    B.    The Arbitration Demand And Harris Bricken's Petition To Stay In State Court ...................................................................................... 7

    C.    The Partial Final Arbitration Award, Preble-Rish's Petition To Confirm, And The District Court's Decision And Judgment .............. 9

    D.    The Republic's Post-Judgment Motion ........................................... 12

    E.    The Related Proceedings Occurring While The Republic's Post-Judgment Motion Was Pending ....................................................... 14

    F.    Preble-Rish's Ongoing Efforts To Enforce The Amended Judgment . 15

    G.    The District Court Decision Appealed From ...................................... 17

SUMMARY OF THE ARGUMENT ....................................................... 19

STANDARD OF REVIEW ................................................................... 21

ARGUMENT ...................................................................................... 22

I.    THE DISTRICT COURT ERRED IN DENYING AS MOOT THE REPUBLIC'S POST-JUDGMENT MOTION ........................................... 22

    A.    Legal Standards - Mootness ........................................................... 22

    B.    If The Judgment Confirming The Final Arbitration Award Is Reversed Or Vacated, The Amended Judgment Confirming The Partial Final Award Will Remain Live And Subject To Enforcement ...................... 22

    C.    In Any Event, The Republic's Post-Judgment Motion Cannot Be Moot Since Preble-Rish Is Actively Pursuing Enforcement Of The Amended Judgment ....................................................................................... 24

II.    AS THE POST-JUDGMENT MOTION IS NOT MOOT, THIS COURT SHOULD REVERSE THE DISTRICT COURT AND GRANT THE MOTION ............................................................................................ 27

i

A.     Legal Standards Applicable To The Republic's Post-Judgment Motion .......................................................................... 27

     1.     Rule 60(b)(4): Relief From Judgment Where Judgment Is Void ............................................................... 27

     2.     Rule 60(b)(1): Relief From Judgment Due To Mistake ........... 28

     3.     Rule 59(e): Alter Or Amend A Judgment ................................. 29

B.     The Amended Judgment Is Void For Lack Of Subject Matter Jurisdiction Since The Republic Has Sovereign Immunity And No Exception Applies ................................................................ 30

     1.     The FSIA Is The Sole Basis For Establishing Subject-Matter Jurisdiction Over The Republic .................................. 30

     2.     No Exception To The Republic's Immunity Applies ............... 31

C.     The Amended Judgment Is Also Void For Lack of Personal Jurisdiction, Since The Republic Was Never Served With The Petition .......................................................................... 33

     1.     Strict Adherence To The FSIA's Service Requirements Is Required ....................................................................... 34

     2.     Service By Fax On A Lawyer For A Different Party Does Not Constitute Proper Service Under Any Scenario ......................... 36

D.     The District Court's Mistake Of Fact In Believing The Republic Appeared In The Case Led It To Enter The Amended Judgment Without Going Through The Default Judgment Process, Which Would Have Made Clear That No Judgment Could Be Entered .................... 37

     1.     The Republic Did Not Appear Through Harris Bricken, Which Never Held Itself Out As Representing The Republic In The Lower Court, And Was Never Retained By The Republic ....... 38

     2.     Since The Republic Did Not Appear Or Answer The Petition, The Court Should Have Required Preble-Rish To Seek A Default Judgment, Which Requires Proof Of Subject Matter and Personal Jurisdiction ................................................ 39

CONCLUSION ......................................................................... 41

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*"R" Best Produce, Inc.* v. DiSapio,
   540 F.3d 115 (2d Cir. 2008) .................................................................. 28

*56 LLC (In re EDC 56 LLC)*,
   330 F.3d 111 (2d Cir. 2003) ................................................................. 29

*310 Assocs. (In re 310 Assocs.)*,
   346 F.3d 31 (2d Cir. 2003) ................................................................... 29

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am., Div. 998 v.*
   *Wisconsin Emp. Rels. Bd.*,
   340 U.S. 416 (1951) ............................................................................. 26

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*,
   600 F.3d 171 (2d Cir. 2010) ................................................................. 30

*Arch Trading Corp. v. Republic of Ecuador*,
   839 F.3d 193 (2d Cir. 2016) ................................................................. 30

*Central Vt. Pub. Serv. Corp. v. Herbert*,
   341 F.3d 186 (2d Cir. 2003) ................................................................. 27

*Chevron Corp. v. Donziger*,
   886 F. Supp. 2d 235 (S.D.N.Y. 2012) ................................................. 26

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979) ............................................................................. 22

*De Curtis v. Ferrandina*,
   529 F. App'x. 85 (2d Cir. 2013) .......................................................... 21

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   191 F.3d 198 (2d Cir. 1999) ........................................................... 22, 23

*Devlin v. Transportation Commc'ns Int'l Union*,
   175 F.3d 121 (2d Cir. 1999) ................................................................. 29

*Eltayib v. United States*,
   294 F.3d 397 (2d Cir. 2002) ................................................................... 4

*Filler v. Hanvit Bank,*
   378 F.3d 213 (2d Cir. 2004) ................................................................. 30

*Frost & Miller, LLP v. Heaven's Way Inv. Tr.,*
   No. 21-cv-6648 (AT) (BCM), 2023 WL 3005530 (S.D.N.Y. Jan. 20, 2023) ....... 39

*Gater Assets Ltd. v. Moldovagaz,*
   2 F.4th 42 (2d Cir. 2021) ................................................. 27, 28, 31, 32

*Hilaturas Miel, S.L. v. Republic of Iraq,*
   573 F. Supp. 2d 781 (S.D.N.Y. 2008) ................................................... 36

*Honig v. Doe,*
   484 U.S. 305 (1988) .......................................................................... 24

*In re Naxos Cleaners, Inc.,*
   No. 22-1988, 2023 WL 6205956 (2d Cir. Sept. 25, 2023) ........................... 21

*ISC Holding AG v. Nobel Biocare Fin. AG,*
   688 F.3d 98 (2d Cir. 2012) ................................................................. 34

*Kato v. Ishihara,*
   360 F.3d 106 (2d Cir. 2004) ............................................................... 30

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,*
   729 F.3d 99 (2d Cir. 2013) ................................................................. 29

*Krohn v. New York City Police Dep't,*
   341 F.3d 177 (2d Cir. 2003) ............................................................... 29

*Leftridge v. Connecticut State Trooper Officer No. 1283,*
   640 F.3d 62 (2d Cir. 2011) ................................................................... 4

*Local 78, Asbestos, Lead & Hazardous Waste Laborers v. Termon Constr., Inc.,*
   No. 01 Civ. 5589 (JGK), 2003 WL 22052872 (S.D.N.Y. Sept. 2, 2003) ............ 28

*Lovati v. Bolivarian Republic of Venez.,*
   No. 19-CV-4793 (ALC), 2020 WL 6647423 (S.D.N.Y. Nov. 11, 2020) .............. 35

*Micula v. Government of Rom.,*
   714 F. App'x. 18 (2d Cir. 2017) .......................................................... 37

iv

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*,
   863 F.3d 96 (2d Cir. 2017) .................................................................. 28, 37

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986) ........................................................................ 28

*Nicosia v. Amazon.com, Inc.*,
   No. 21-2624-CV, 2023 WL 309545 (2d Cir. Jan. 19, 2023) ................................ 21

*Przewozman v. Islamic Republic of Iran*,
   628 F. Supp. 3d 307 (D.D.C. 2022) ........................................................ 36

*Reed & Martin, Inc. v. Westinghouse Elec. Corp.*,
   439 F.2d 1268 (2d Cir. 1971) .................................................................. 34

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*,
   235 F.3d 738 (2d Cir. 2000) .................................................................. 37

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019) ........................................................................ 35

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ............................................................................ 30

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) .................................................................. 29

*Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*,
   619 F.3d 207 (2d Cir. 2010) .................................................................. 39

*Stevens v. Miller*,
   676 F.3d 62 (2d Cir. 2017) .................................................................. 29

*Tang v. Grossman*,
   No. 22-464, 2023 WL 2229366 (2d Cir. Feb. 27, 2023) ................................ 21

*Technologists, Inc. v. Mir's Ltd.*,
   725 F. Supp. 2d 120 (D.D.C. 2010) ........................................................ 34

*TIG Insurance Co. v. Republic of Argentina*,
   No. 18-mc-00129 (DLF), 2022 WL 1154749 (D.D.C. Apr. 18, 2022) ........... 31, 32

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*,
 593 F. Appx. 32 (2d Cir. 2014) ..................................................... 22, 23

*United States Aid Funds, Inc. v. Espinoza*,
 559 U.S. 260 (2010) ............................................................................ 27

*Virgin Atl. Airways, Ltd. v. National Mediation Bd.*,
 956 F.2d 1245 (2d Cir. 1992) ............................................................. 29

**Statutes**

9 U.S.C. § 9 ......................................................................................... 34

9 U.S.C. § 10 ....................................................................................... 34

28 U.S.C. § 1291 ................................................................................... 4

28 U.S.C. §§ 1602-1611 ........................................................................ 4

28 U.S.C. § 1604 ................................................................................. 30

28 U.S.C. § 1605(a)(6) ................................................................... 31, 32

28 U.S.C. § 1608 ........................................................................... 34, 36

28 U.S.C. § 1608(a) ....................................................................... 35, 36

CPLR 7503(b) ....................................................................................... 8

**Rules**

Fed. R. Civ. P. 4 .................................................................................. 34

Fed. R. Civ. P. 4(j) .............................................................................. 34

Fed. R. Civ. P. 55 ................................................................................ 39

Fed. R. Civ. P. 59(e) ............................................................................ 40

Fed. R. Civ. P. 60(b) ....................................................................... 4, 29

Fed. R. Civ. P. 60(b)(1) ................................................................. 14, 28

Fed. R. Civ. P. 60(b)(4) ................................................. 13, 20, 27, 28

## PRELIMINARY STATEMENT

In the order at issue on this appeal, the district court denied as moot a post-judgment motion by Appellant the Republic of Haiti (the "Republic") to set aside a judgment entered against it without the Republic having appeared in the case or the court having assessed the existence of subject matter or personal jurisdiction. The Republic's post-judgment motion showed that the court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act (the "FSIA"), and also lacked personal jurisdiction because the claimed service—via fax on a lawyer that was not representing the Republic in the case—does not under any circumstances constitute proper service under the FSIA. Had the district court followed the default judgment procedure required when a defendant does not respond to a complaint, Petitioner-Appellee Preble-Rish Haiti, S.A. ("Preble-Rish") would not have been able to demonstrate subject matter or personal jurisdiction, and no judgment could have been entered against the Republic. The district court, however, did not notice that the Republic had not appeared in the case. The court believed the Republic was represented by counsel for the co-Respondent, even though that counsel never held itself out in the district court as counsel for the Republic.

The judgment, accordingly, was both void on multiple jurisdictional grounds, and voidable as a result of the district court's mistake in believing the Republic had appeared when it had not, leading the court to forego inquiring whether jurisdiction

existed and proper service had been made, as necessary to support a judgment against the Republic.

Instead of removing this non-viable judgment from the books, the district court concluded that the Republic's post-judgment motion was mooted by a subsequent judgment. The Republic's post-judgment motion sought to set aside a judgment in favor of Preble-Rish confirming a "partial final arbitration award" awarding "interim security" of $23 million pending the outcome of the underlying arbitration. After the lower court issued the judgment on the partial final arbitration award, it then issued an order confirming the arbitrators' final arbitration award on the same underlying liability. Now that it had confirmed the final arbitration award, the court reasoned, the "temporary relief" embodied in the judgment on the partial final award was subsumed within the judgment on the final award and was no longer an obligation of the Republic.

The judgment on the partial final award reflects no such qualification, however, and the district court's order is therefore reversible error for two reasons. First, the district court did not account for the Republic's appeal of the judgment on final award, which is pending in this Court and is to be heard in tandem with this appeal. If the judgment on the final award is reversed or vacated, under the district court's own theory there will be nothing for the partial final award to be subsumed

2

into.  The judgment on the partial final award will remain on the books and subject to enforcement like any other judgment.

In addition, even apart from the Republic's appeal of the judgment on the final award, the Republic's post-trial motion is not moot because Preble-Rish is actively enforcing the judgment the Republic sought to vacate.  Preble-Rish has registered the judgment on the partial final award in Texas, and has filed at least six proceedings in the federal courts there seeking to collect on the judgment.  Most recently, a month ago, on October 9, 2023—three months after the district court ruled that the judgment was no longer an obligation of the Republic due to the court's confirmation of a final award—Preble-Rish filed a motion seeking enforcement of that judgment and disbursement of $4.4 million being held in the Southern District of Texas court registry as a result of aggressive litigation by Preble-Rish against a garnishee claimed to possess funds of co-Respondent BMPAD.  Preble-Rish evidently did not inform the Texas court that the judgment it is trying to collect on was, three months earlier, held by the lower court to be only "temporary relief" that "is not . . . a wholly separate and independent liability" of the Republic.  SPA-4-5.

In these circumstances, the Republic's post-judgment motion to vacate the judgment on the partial final award cannot be moot.  This Court should therefore reverse the district court's order and grant the motion on any of the multiple independent grounds set forth above.

3

## JURISDICTIONAL STATEMENT

Respondent-Appellant Republic of Haiti notes that its appeal concerns the district court's order ruling on a post-judgment motion in which the Republic argued that the district court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"). Thus, the Republic disputes the existence of subject matter jurisdiction.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, because the Republic appeals from a final decision of the district court, which denied the Republic's motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b), or, in the alternative, to alter or amend the judgment pursuant to Rule 59(e). The district court's decision "end[ed] the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 66 (2d Cir. 2011); *see also Eltayib v. United States*, 294 F.3d 397, 399 (2d Cir. 2002) (order "denying a motion pursuant to Fed. R. Civ. P. 60(b)[,] is a 'final decision' appealable pursuant to 28 U.S.C. § 1291") (quoting 28 U.S.C. § 1291).

This appeal is timely. The district court decision was entered on July 20, 2023, SPA-1-5, and the Republic timely filed its Notice of Appeal on July 28, 2023. JA-867.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Is the Republic's motion to set aside the district court's judgment on a partial final arbitration award moot based on a subsequent decision of the district court confirming a final arbitration award, where the Republic has appealed the subsequent decision and its reversal by this Court would eliminate the district court's basis for deeming the motion moot?

The district court incorrectly answered yes.

2.    Is the Republic's motion to set aside the district court's judgment moot where Preble-Rish continues to actively enforce the judgment?

The district court incorrectly answered yes.

3.    Did the district court err in denying the Republic's motion to set aside the district court's judgment, where the district court lacked subject matter and personal jurisdiction, and Preble-Rish failed to effect service on the Republic, resulting in the judgment being void?

The district court erroneously declined to address the question on the merits.

4.    Did the district court err in denying the Republic's motion to set aside the district court's judgment, where the district court mistakenly believed the Republic appeared in the case when it did not appear before judgment, and therefore entered judgment without requiring Preble-Rish to establish subject matter and personal jurisdiction or proper service, as required to obtain a default judgment?

The district court erroneously declined to address the question on the merits.

5

## STATEMENT OF THE CASE

### A.    The Contracts Between Preble-Rish And BMPAD

#### 1.    The Contract Subject Matter And Parties

The underlying dispute arises under three contracts between Preble-Rish and

Respondent Bureau de Monétisation des Programmes d'Aide Au Développement

("BMPAD"), an independent and autonomous government agency of Haiti. *See*

District Court's Opinion and Order dated June 29, 2023, JA-766-67. Under the three

contracts (collectively, the "Contracts"), Preble-Rish agreed to provide BMPAD

with deliveries of diesel fuel, jet fuel, and gasoline over a period of six months. JA-

766-67. The only signatories to the Contracts were Preble-Rish and BMPAD; **the**

**Republic was neither a party nor a signatory** to the Contracts. JA-766, 309, 345,

380.

As used in this brief, the term "BMPAD" refers only to Respondent Bureau de

Monétisation des Programmes d'Aide Au Développement.

#### 2.    The Arbitration Clause

Each of the three Contracts includes "an identical arbitration clause" for

resolution of disputes between Preble-Rish and BMPAD (the "Arbitration Clause"),

which states in relevant part:

Article 20. ARBITRATION AND LEGISLATION

In the event of a dispute between the Buyer [BMPAD] and Seller
[Preble-Rish] under this Contract, the dispute shall be submitted by
either party to arbitration in New York before three arbitrators. The

6

> Party initiating the arbitration shall provide written notice of its intention to submit the matter to arbitration. . . . The decision of the arbitrators shall be final, conclusive and binding on all Parties. Judgment upon such award may be entered in any court of competent jurisdiction. . . .

JA-767.

### B. The Arbitration Demand And Harris Bricken's Petition To Stay In State Court

On November 20, 2020, Preble-Rish issued a Notice Demanding Arbitration "under the three fuel oil contracts." JA-73-75; JA-767 (the "Arbitration Demand"). The Arbitration Demand was addressed to BMPAD only, not to the Republic, was sent by e-mail to BMPAD's Managing Director, Mr. Fils Aimé Saint Fleur, at his official governmental email addresses, and claimed to demand arbitration against "the Republic, by and through its agent [BMPAD]." JA-73. The Arbitration Demand included as a "cc" Michel Patrick Boisvert, Haiti's Minister of Economy and Finance, at a non-governmental Yahoo address. JA-75.

In a December 4, 2020 letter, a lawyer with Harris Bricken Sliwoski LLP ("Harris Bricken") made contact with the arbitrators. The letter identified Harris Bricken as counsel for the "Government of Haiti" and BMPAD and objected to the arbitration. JA-768. Harris Bricken's claim that it was representing the Republic was unauthorized and unknown to the Republic. JA-402-04. The Republic only learned of Harris Bricken's false assertion that it was representing the Republic in or around February 2022. JA-402-03. Harris Bricken has conceded in a letter to this

7

Court that it never had authority to represent the Republic. *See* Second Circuit Case No. 21-2469, being heard in tandem with this appeal, at ECF Doc. 108; *see also* Joint Appendix in Case No. 23-1096, being heard in tandem with this appeal, at page JA-814.

Shortly thereafter, on December 22, 2020, Harris Bricken filed a petition in New York state court to stay the arbitration pursuant to CPLR 7503(b) ("Stay Petition"). JA-769. The case was assigned to Justice Andrew Borrok. The Stay Petition, purportedly made on behalf of "Petitioners, REPUBLIC OF HAITI ('ROH'), BUREAU DE MONÉTISATION DE [sic] PROGRAMMES D'AIDE AU DÉVELOPPEMENT ('BMPAD')", argued that (1) the Arbitration Demand was procedurally deficient because it had not been properly served under New York law or translated to French and Haitian Creole, and that (2) the Arbitration Clause was invalid under Haitian law. JA-769-70. The Stay Petition did not argue the Republic was not a party to the Contracts. JA-769-70; *see also* Joint Appendix in Case No. 23-1096, being heard in tandem with this appeal, at pages JA-769-772 (state court stay petition).

On September 27, 2021, Justice Borrok issued an order denying the Stay Petition and granting Preble-Rish's cross-motion to compel arbitration (the "State Court Stay Denial Order"), concluding that "'petitioners fail[ed] to establish that the arbitration provisions are illegal under Haitian law.'" JA-770. Harris Bricken

8

appealed the denial of the stay to the First Department, which affirmed the State

Court Denial Order.  JA-770.

### C.    The Partial Final Arbitration Award, Preble-Rish's Petition To Confirm, And The District Court's Decision And Judgment

Back in arbitration, Harris Bricken continued to lodge objections to the

panel's jurisdiction.  In addition to its December 4, 2020 letter, Harris Bricken raised

jurisdictional objections in pleadings dated March 27, 2021, April 23, 2021, and

October 26, 2021, and in a June 2, 2021 email.  JA-87-88; Joint Appendix in Case

No. 23-1096, being heard in tandem with this appeal, at pages JA-271, 282, 316,

604-05, 609.  In none of these submissions did Harris Bricken argue that the

Republic was not a signatory to the Contracts.

On August 6, 2021, the panel issued a "partial final award" in the amount of

$23,043,429.79 (the "Partial Final Award"), as "pre-award security" in favor of

Preble-Rish. The Partial Final Award stated that it was issued against "BMPAD," a

defined term the arbitrators created to refer to "the Respondent [*singular*], Republic

of Haiti, Bureau de Monétisation de[s] Programmes d'Aide au Développement."

JA-18. The arbitrators noted in a footnote that during the proceedings, "the

Respondent," singular, has also been "identified by the acronyms 'ROH' (Republic

of Haiti) and 'GOH' (Government of Haiti)."  JA-18.  The Partial Final Award

described BMPAD as "an agency of the government of Haiti," JA-29, and ordered

"BMPAD" to make a $23,043,429.79 deposit in an escrow account to be established by the parties. JA-47.

On August 9, 2021, Preble-Rish filed the petition below to confirm the Partial Final Award. JA-48-49 (the "Petition"). Although the Partial Final Award was only against BMPAD, as defined by the arbitrators to mean only the Haitian government agency that was Preble-Rish's sole counterparty on the Contracts, Preble-Rish claimed in the Petition that it was being brought against BMPAD and the Republic. JA-48-49. The accompanying Notice of Petition, however, recognized that the Partial Final Award was "rendered against Respondent BMPAD" only, and not against the Republic. JA-13.

BMPAD, through Harris Bricken, opposed the Petition. See JA-68, JA-145, JA-4 (ECF Docs. 19-21). Harris Bricken appeared on behalf of BMPAD only, as its filings expressly stated. *See, e.g.*, JA-171 (BMPAD's memorandum of law in opposition to Petition, signed by Harris Bricken as "Attorneys for Bureau de Monétisation De Programmes D'Aide Au Développement"); JA-233 (letter from Harris Bricken to district court stating "We represent Republic of Haiti's Bureau de Monétisation De[s] Programmes D'Aide Au Développement"); JA-277 (letter from Harris Bricken to district court stating "We represent Republic of Haiti's Bureau de Monétisation De[s] Programmes D'Aide Au Développement" and that the Republic had "never appeared" in the action).

10

No counsel appeared on behalf of the Republic before judgment was entered by the district court on the Partial Final Award. See JA-1-7 (docket entries through February 3, 2022).

On January 26, 2022, the district court issued an Opinion and Order granting the petition against "BMPAD," which the court defined to include the Republic and BMPAD, even though the Republic had not appeared in the case. *Id*., at JA-256. The district court rejected BMPAD's defenses of "'illegality of agreement,' 'lack of due process in arbitration,' an 'improper arbitration panel,' and 'public policy.'" JA-264. The court reasoned that "BMPAD's assertion that the arbitration provision is illegal under Haitian law . . . goes to the arbitrability issue raised and decided in the New York state court proceeding," because Justice Borrok ruled that "'petitioners failed to establish that the arbitration provisions are illegal under Haitian law..'" JA-264-65. The court therefore held that res judicata barred BMPAD from "relitigate[ing] the issue of arbitrability here." JA-265.

The district court also rejected BMPAD's argument that it was "'unable to present [its] case'" in the arbitration due to a Covid surge in Haiti and the July 2021 assassination of Haitian President Jovenel Moise, finding, on the latter point, that "the record indicated that it was Mr. Saint-Fleur[, Managing Director of BMPAD,] who was directing BMPAD's response efforts in this dispute, not the assassinated president." JA-268.

11

On January 26, 2022, the SDNY Clerk entered a Judgment "as against BMPAD." JA-273. The same day, Preble-Rish filed a letter asking the district court to clarify, and direct the Clerk to amend, its judgment to say that it was against BMPAD *and* the Republic. JA-274. In response, BMPAD's counsel informed the district court by letter that the Republic "never appeared in this or any related action." JA-278. Nonetheless, the district court granted Preble-Rish's request. JA-279-82. On February 3, 2022, the Clerk entered an Amended Judgment "as against respondents the Republic of Haiti and the Bureau de Monétisation des Programmes d'Aide au Développement (collectively, 'BMPAD'). Final judgment is entered for [Preble-Rish] as against BMPAD" (the "Amended Judgment"). JA-287. Again, the Republic had not appeared in the case before entry of the Amended Judgment. JA-1-7 (docket entries through February 3, 2022).

### D.     The Republic's Post-Judgment Motion

The Republic then retained the undersigned counsel and, on February 22, 2022, appeared in the case for the first time. JA-7 (ECF Docs. 58-61). The same day, the Republic moved under Rules 60(b) and 59(e) for relief from the original judgment and the Amended Judgement or to alter and amend the judgment. JA-7 (ECF Docs. 63—67) (the "Post-Judgment Motion" or the "Motion"). The Motion first argued the court lacked subject matter jurisdiction because no exception to the Republic's sovereign immunity applied, and Preble-Rish had not alleged the existence of any exception. In particular, the Motion argued that the arbitration

12

exception did not apply because the Republic is not a party to the Contracts between Preble-Rish and BMPAD. *See* ECF Doc. 64 in district court record below (Republic's moving memorandum of law), SDNY Docket No. 21-civ-6704 (the "District Court Record"), at 11-13 (filing reflected at JA-7 (docket sheet)).

The Post-Judgment Motion also argued that the court lacked personal jurisdiction as a result of the absence of service on the Republic. It is undisputed that Preble-Rish's only claimed service was to fax the Petition and related papers to a lawyer for Harris Bricken, an approach not authorized by any of the service provisions of the FSIA. District Court Record, ECF Doc. 64 at 13-17. Even though Harris Bricken was not claiming to represent the Republic in the district court, in support of the Post-Judgment Motion the Republic submitted a declaration from Minister Boisvert, explaining that the Republic never retained Harris Bricken or authorized the firm to act on its behalf in arbitration or litigation against Preble-Rish, and had never communicated with anyone from the firm. JA-402-03 (the "Boisvert Declaration"). In its response, Preble-Rish did not dispute that its only claimed service was by fax on a lawyer with Harris Bricken.

The Republic explained that lack of subject matter jurisdiction and lack of personal jurisdiction are grounds for voiding a judgment under Federal Rule of Civil Procedure 60(b)(4). *See* District Court Record, ECF Doc. 64, at 8-9.

The Republic also argued that the judgment should have been set aside under Rule 60(b)(1) due to the district court's mistake of fact in assuming that the Republic had appeared in the case through Harris Bricken—even though, as explained above, Harris Bricken never held itself out before the district court as representing the Republic—leading the court to erroneously forego applying its default judgment procedure to the Republic. Had the court done so, it would have been apparent that no judgment could be entered against the Republic, because Preble-Rish could not comply with the requirements to set forth the basis for subject matter and personal jurisdiction and certify that the Republic had been properly served. *See* District Court Record, ECF Doc. 64 (Republic's memorandum of law), at 17-20.

### E. The Related Proceedings Occurring While The Republic's Post-Judgment Motion Was Pending

Meanwhile, two weeks before the Republic made the Post-Judgment Motion, on February 7, 2022, an arbitration hearing was held by videoconference. On August 23, 2022, the arbitrators issued a Corrected Final Award (the "Final Award"). In the Final Award, the arbitrators awarded Preble-Rish a total of $28,184,756.65 against BMPAD and the Republic, jointly and severally. JA-771.

On September 1, 2022, Preble-Rish filed a petition to confirm the Final Award (the "Final Award Petition"). JA-771. The action was assigned district court docket number 22-cv-7503 (the "Final Award Action"). The Republic moved to dismiss the Final Award Petition for lack of subject matter and personal jurisdiction, and

14

improper service, under the FSIA, or, in the alternative, to vacate the Final Award on the grounds that the arbitrators exceeded their powers in finding the dispute arbitrable against the Republic as a non-signatory to the Contracts. The Republic also opposed confirmation of the Final Award. JA-765.

In the district court's June 29, 2023 order, the district court granted Preble-Rish's Final Award Petition, and denied the Republic's motion to dismiss or, in the alternative to vacate the Final Award. JA-765-790. The district court filed its June 29, 2023 order in the Final Award Action and in this action, pertaining to the Partial Final Award. The Republic timely appealed the judgment in the Final Award Action, and those proceedings are the subject of the Republic's appeal in Second Circuit Docket No. 23-1096, being heard in tandem with this appeal.[1]

**F.    Preble-Rish's Ongoing Efforts To Enforce The Amended Judgment**

Preble-Rish has filed multiple proceedings in multiple courts seeking to enforce the Amended Judgment. For example, Preble-Rish has filed a total of at least five proceedings in the Southern and Northern Districts of Texas to enforce the Amended Judgment. *See Preble-Rish Haiti, S.A. v. Republic of Haiti et al.*, No. 21-cv-01953 (S.D. Texas) (Opposed Motion For Post-Judgment Discovery, ECF Doc.

---

[1] Additional factual background relating to the arbitration, the final arbitration award, the petition to confirm the Final Award, and the district court's judgment confirming the Final Award is set forth in the Republic's brief in Case No. 23-1096 (ECF Doc. No. 92), *see* pages 11-16, which is being heard in tandem with this appeal. The factual background and the Republic's entire brief in Case No. 23-1096 are incorporated by reference into this brief.

171); *Preble-Rish Haiti, S.A. v. Republic of Haiti et al.*, No. 22-mc-00304 (S.D.

Tex.) (Clerk's Certification of a Judgment To Be Registered in Another

District/Other Miscellaneous Relief, ECF Doc.1); *Preble-Rish Haiti, S.A. v. Republic*

*of Haiti et al.*, No. 22-mc-00318 (S.D. Tex.) (Application for Writ of Garnishment

and Turnover Order, ECF Doc. 1); *Preble-Rish Haiti, S.A. v. Republic of Haiti et al.*,

22-mc-00010 (N.D. Texas) (Registration of Judgment From Another Court, ECF

Doc. 1). JA-797-811.

In a sixth proceeding, as a result of a July 21, 2022 ex parte submission in the

Northern District of Texas (ND Tex. Dkt No. 22-cv-00627-P), JA-806, Preble-Rish

obtained, on August 2, 2022, an order and writ of garnishment against American

Airlines, directing the airline to deposit up to $23,043,429.79 into the court's

registry, and directing American Airlines to answer the petition after being notified

of its pendency by Preble-Rish. JA-815-821.

At the time of the district court proceedings, in the Southern District of Texas

proceeding bearing Docket Number 21-cv-01953, Preble Rish was poised to recover,

based on the Amended Judgment, $4,408,751 of BMPAD funds from a garnishee,

BB Energy, which the garnishee placed into the court's registry for such a purpose

following extensive enforcement litigation. JA-812-14. Just a month ago in that

same proceeding, on October 9, 2023, Preble-Rish filed a motion seeking

disbursement of those funds from the court's registry. *See* ECF Doc. 211, in S.D.

Tex. No. 21-cv-01953 (Preble-Rish's "Motion for an Order Authorizing Disbursement of Funds from the Court's Registry, or Alternatively For Issuance of A Writ of Execution").  Preble-Rish's October 9 motion comes three months after the lower court ruled that the Republic's "pre-award security obligations" embodied in the Amended Judgment were "no longer [] live." JA-789.

### G.    The District Court Decision Appealed From

In an order dated July 20, 2023, the district court denied the Republic's Post-Judgment Motion on the grounds that the Motion was moot in light of the court's confirmation of the Final Award in the Final Award Action (docket number 22-cv-7503). SPA-1-5.

The court explained that the Partial Final Award "was 'an award of interim security'" (quoting Partial Final Award), which "by its nature" is a 'temporary' grant of relief 'to preserve the status quo' and 'help ensure the satisfaction of an eventual award.'" SPA-4 (quoting Restatement of the Law of International Commercial and Investor-State Arbitration).  Accordingly, the court reasoned, the Amended Judgment, *i.e.*, the judgment on the Partial Final Award, "exists only as temporary relief to secure future payment of the Final Award," rather than "a wholly separate and independent liability" that the Republic "will have a continuing obligation to pay." SPA 4-5.

17

The court spelled out why the "temporary" nature of the Amended Judgment rendered the Motion moot in its June 29, 2023 decision granting Preble-Rish's petition to confirm the Final Award Action.[2]  The court explained:

> After confirmation of the Final Award, the dispute over interim, "pre-award" security obligations will no longer be "live."  The amount that [the Republic] had previously been required to deposit in escrow has now been subsumed into the greater sum it is liable for in the Final Award.  Granting [the Republic] the relief it seeks regarding the Partial Final Award judgment would not impact its obligations to PRH.

JA-789.  In other words, according to the district court, the Republic's motion to set aside the judgment on the Partial Final Award was moot only because there was now a judgment on the Final Award arising out of the same liability.

Due to its ruling that the Motion was moot, the district court did not address the merits of the Motion.

As a result of the district court's denial of the Post-Judgment Motion, the Amended Judgment has not been vacated and remains in force.

---

[2] While explaining its view in that decision that the Motion had become moot, the district court gave the parties an opportunity to brief the mootness issue before rendering a final decision.  The July 20, 2023 order (the "Mootness Order" or the "Order") is the court's final decision, rendered after receiving the parties' briefing.

## SUMMARY OF THE ARGUMENT

The district court erred in denying as moot the Republic's Post-Judgment Motion for two reasons.

First, the court held the Motion was moot only because the court had confirmed the Final Award, stating that the $23 million the Republic was required to deposit into escrow under the Amended Judgment "has now been subsumed" into the $28 million Final Award. The judgment on the Final Award, however, is the subject of the Republic's appeal to this Court in docket no. 23-1096, which is to be heard in tandem with this appeal.  If the judgment on the Final Award were to be reversed or vacated, there would be no judgment into which the Amended Judgment is subsumed.  Rather, the Amended Judgment would remain a standalone judgment subject to enforcement like any other.

In addition, even apart from the Republic's pending appeal of the judgment on the Final Award, the Motion is not moot because Preble-Rish is actively pursuing enforcement of the Amended Judgment, treating it not as an "interim grant of security" but as a judgment, like any other, subject to enforcement. Through its ongoing enforcement activity, most recently a motion filed last month in the Southern District of Texas, Preble-Rish is now poised to collect over $4.4 million based on the Amended Judgment.

Since the Post-Judgment Motion is not moot, the district court erred in denying the Motion.  First, the Amended Judgment should have been set aside as

19

void under Rule 60(b)(4), as the district court lacked subject matter or personal jurisdiction over the Republic and Preble-Rish failed to effect service under the FSIA. In addition, the district court made a fatal mistake of fact in assuming the Republic had appeared in the case through Harris Bricken when the firm never held itself out as representing the Republic in the case, and indeed informed the court that the Republic had not apppeared.  That mistake caused the district court to forego the usual requirement that the plaintiff seek a default judgment if the defendant does not respond to the complaint against it. Had the district court required Preble-Rish to pursue a default judgment, no judgment could have been entered against the Republic since Preble-Rish would have been unable to establish subject matter jurisdiction, personal jurisdiction, or proper service under the FSIA.

Accordingly, this Court should reverse the Order, grant the Republic's Post-Judgment Motion, and remand with instructions to the district court to vacate the Amended Judgment.

## STANDARD OF REVIEW

This Court reviews "de novo a district court's denial of a motion to vacate a judgment pursuant to Rule 60(b)(4)," while all other grounds for denial of a Rule 60(b) motion are reviewed for abuse of discretion. *De Curtis v. Ferrandina*, 529 F. App'x. 85, 85 (2d Cir. 2013). However, the Court reviews issues of law underlying the district court's decision de novo. *See Nicosia v. Amazon.com, Inc.*, No. 21-2624-CV, 2023 WL 309545, at *1 (2d Cir. Jan. 19, 2023). Similarly, "[o]rders denying Rule 59(e) motions are reviewed for abuse of discretion, with underlying questions of law reviewed de novo." *Tang v. Grossman*, No. 22-464, 2023 WL 2229366, at *1 (2d Cir. Feb. 27, 2023).

Here, the district court denied the Post-Judgment Motion on the sole basis that it believed the Motion was moot. "As mootness is a question of law [the Court] review[s] questions of mootness *de novo.*" *In re Naxos Cleaners, Inc.*, No. 22-1988, 2023 WL 6205956, at *1 (2d Cir. Sept. 25, 2023).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN DENYING AS MOOT THE REPUBLIC'S POST-JUDGMENT MOTION

### A. Legal Standards - Mootness

As the district court recognized, a case may become moot if the party arguing mootness "can demonstrate that '(1) it can be said with assurance that there is no reasonable expectation ... that the alleged violation will recur, ... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). A dispute is moot only when, "by virtue of an intervening event, a [court] cannot grant any effectual relief whatever in favor of" the party seeking relief. *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 593 F. Appx. 32, 35 (2d Cir. 2014).

"The burden of demonstrating mootness 'is a heavy one.'" *Desiderio*, 191 F.3d at 202 (quoting *Davis*, 440 U.S. at 631).

### B. If The Judgment Confirming The Final Arbitration Award Is Reversed Or Vacated, The Amended Judgment Confirming The Partial Final Award Will Remain Live And Subject To Enforcement

In denying the Post-Judgment Motion, the district court reasoned that the Motion was moot because the liability underlying the Amended Judgment—i.e., the judgment on the Partial Final Award—was "subsumed" within the court's order granting the Petition to confirm the final award. Mootness, therefore, depends

22

*entirely* on the continuing force of the district court order and judgment confirming the Final Award. But the Republic has challenged that order and judgment on appeal, and that appeal remains pending as Docket Number 23-1096. If that judgment on the Final Award is reversed or vacated, there will be no final decision or judgment on the books to "subsume" the Amended Judgment on the Partial Final Award. Rather, the Amended Judgment will remain an independent judgment subject to enforcement like any other.

Accordingly, it is simply not the case that the district court's grant of Preble-Rish's Final Award Petition in the Final Award Action has "completely and irrevocably eradicated the effects of" the Amended Judgment. *Desiderio,* 191 F.3d 198 at 202, or that by virtue of this "intervening event," the district court could not "grant any effectual relief whatever in favor of" the Republic. *U.S. Commodity Futures Trading Comm'n*, 593 F. App'x. at 35. Should this Court reverse or vacate the judgment on the Final Award, there would be a live controversy over whether the independent judgment on the Partial Final Award (*i.e.*, the Amended Judgment), should be set aside. Either this Court, or the district court on remand, could grant the relief requested in the Republic's Post-Judgment motion, namely, to set aside the Amended Judgment as against the Republic. In short, because of the possibility of a ruling in the Republic's favor by this Court in the related appeal in Case Number 23-1096, the Republic "faces some likelihood of becoming involved in [the]same

controversy in the future." *Honig v. Doe*, 484 U.S. 305, 320 (1988) (internal

quotation marks omitted).

### C.    In Any Event, The Republic's Post-Judgment Motion Cannot Be Moot Since Preble-Rish Is Actively Pursuing Enforcement Of The Amended Judgment

The Motion also is not moot for the independent reason that Preble-Rish is

actively pursuing enforcement of the Amended Judgment on the Partial Final Award.

Preble-Rish's treatment of the Amended Judgment as a live judgment subject to

enforcement should be dispositive.

From the outset and continuously since, Preble-Rish has aggressively sought

to enforce the Amended Judgment.  Indeed, even before the Amended Judgment was

issued based on Preble-Rish's letter asking the district court to clarify that it ran

against the Republic—which Preble-Rish knew had not appeared—as well as

BMPAD, Preble-Rish asked the lower court to order that the original judgment could

be registered in the Southern District of Texas.  JA-275.  By February 11, 2022, the

district court Clerk of Court certified the Amended Judgment to be registered in

another district, JA-694-695, and Preble-Rish registered the judgment in the

Southern District of Texas four days later. JA-855.

By July 2022 Preble-Rish had registered the Amended Judgment in the

Northern District of Texas. JA-807, JA-819-20.  On August 2, 2022, Preble-Rish

obtained a writ of garnishment against American Airlines ordering the airline to

deposit any assets of BMPAD and the Republic, up to $23,043,429.79, into the court

24

registry, and to refrain from delivering to them any amounts without first retaining amounts up to $23,043,429.79 for the benefit of Preble-Rish.

For two and a half years Preble-Rish aggressively litigated to collect funds from a garnishee energy company that did business with BMPAD, BB Energy, in the Southern District of Texas. What Preble-Rish began as a Rule B maritime pre-judgment attachment action in June 2021 brought multiple discovery disputes, motions to strike, for reconsideration, and for attorneys fees; BB Energy's successful Fifth Circuit appeal vacating the initial ex parte attachment under the FSIA; and ultimately transformation of the case from a pre-judgment attachment action to a judgment enforcement action based on Judge Castel's judgment on the Partial Final Award. JA-829-847 (S.D. Texas docket sheet); JA-826-27 (Preble-Rish informing S.D. Texas court of judgment on Partial Final Award and arguing that it "would provide an alternative basis for attachment and garnishment").

Most critically, Preble-Rish's enforcement activity in the Southern District of Texas continues to this day. Three months after the district court ruled that its own confirmation of the Final Award means the Republic's "pre-award security obligations" are "no longer [] live," JA-789, Preble-Rish is continuing to enforce the Amended Judgment in the BB Energy case. On October 9, 2023, Preble-Rish filed the latest paper in its ongoing efforts to obtain more than $4.4 million in BMPAD funds BB Energy placed in the court's registry to settle the litigation—a motion

25

seeking release of those funds or, in the alternative seeking a writ of execution.  *See* S.D. Tex. Case No. 21-cv-01953, ECF Doc. No. 211.  Preble-Rish evidently did not tell the Texas court that three months earlier a district court in the Southern District of New York ruled that the Amended Judgment was no longer "live." While Preble-Rish does not provide the Republic with notice of its enforcement actions against the Republic, it stands to reason that, since Preble-Rish views the Amended Judgment as a live judgment upon which to pursue collection activity, its enforcement efforts are not limited to the Southern District of Texas BB Energy case.

In short, since the Amended Judgment remains on the books, there is no obstacle to Preble-Rish's seeking further enforcement of it, and Preble-Rish is actively taking steps to enforce it.  Unless that judgment is vacated there will continue to be nothing stopping Preble-Rish from enforcing it.  Thus, the Motion seeking vacatur of the Amended Judgment is not moot.  *See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.*, 340 U.S. 416, 417, n.1 (1951) (with respect to judgment, "[n]o question of mootness can be raised so long as enforcement of that judgment is sought"); *see also Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 271 (S.D.N.Y. 2012) (representations by litigants that they would "never ... seek recognition of the Ecuadorian Judgment in New York 'by any means or under any law'" did not moot defenses raised).

## II.    AS THE POST-JUDGMENT MOTION IS NOT MOOT, THIS COURT SHOULD REVERSE THE DISTRICT COURT AND GRANT THE MOTION

Because the Post-Judgment Motion is not moot, the district court erred in denying the Motion.  This Court should reverse the district court's order and grant the Motion.

### A.    Legal Standards Applicable To The Republic's Post-Judgment Motion

#### 1.    Rule 60(b)(4): Relief From Judgment Where Judgment Is Void

Rule 60(b)(4) of the Federal Rules of Civil Procedure authorizes courts to "relieve a party. . . from a final judgment" when "the judgment is void." Fed. R. Civ. P. 60(b)(4). "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United States Aid Funds, Inc. v. Espinoza*, 559 U.S. 260, 270 (2010).  Rule 60(b)(4) applies only "where a judgment is premised either on a certain kind of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id*. at 271. This "certain kind" of jurisdictional error means that the court "'plainly usurped jurisdiction,' or, put somewhat differently, when 'there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction.'" *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (quoting *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003)).

27

"Jurisdiction" can refer to subject-matter or personal jurisdiction, and both defenses may be asserted post-judgment. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 111 (2d Cir. 2017) ("A judgment is void for purposes of [Rule 60(b)(4)] if the court entering judgment lacked subject matter or personal jurisdiction over the judgment debtor."); *see also Gater Assets*, 2 F.4th at 54 (reversing denial of Rule 60(b)(4) motion for lack of subject matter jurisdiction over sovereign state); *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008) (voidness of judgment for lack of personal jurisdiction can be asserted on a collateral challenge after entry of judgment, even where defendant receives notice of lawsuit); *Local 78, Asbestos, Lead & Hazardous Waste Laborers v. Termon Constr., Inc.*, No. 01 Civ. 5589 (JGK), 2003 WL 22052872, at *3 (S.D.N.Y. Sept. 2, 2003) (judgment entered by means of improper service of process is void for lack of personal jurisdiction).

## 2. Rule 60(b)(1): Relief From Judgment Due To Mistake

Separately, Rule 60(b)(1) permits courts to "relieve a party or a party's legal representative . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Because this rule "strikes a balance between serving the ends of justice and preserving the finality of judgments," it should be "broadly construed to do substantial justice" even though "final judgments should not be lightly reopened." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Relief from judgment is available for any mistake, including

mistakes of the court and mistakes of both law and fact. *See Gey Assocs. Gen. P'ship v. 310 Assocs. (In re 310 Assocs.)*, 346 F.3d 31, 34-35 (2d Cir. 2003). The decision whether to grant a motion made under Rule 60(b) is a matter of discretion. *See Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2017).

### 3. Rule 59(e): Alter Or Amend A Judgment

Rule 59(e) authorizes courts to grant a motion to alter or amend a final judgment, which courts treat as a motion for reconsideration. *See Krohn v. New York City Police Dep't*, 341 F.3d 177, 179 (2d Cir. 2003). The movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Key Mech. Inc. v. EDC 56 LLC (In re EDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A court may alter or amend a judgment under Rule 59(e) when the movant identifies "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). The decision as to whether to grant a Rule 59(e) motion is committed to the district court's sound discretion. *See Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999).

**B.** **The Amended Judgment Is Void For Lack Of Subject Matter Jurisdiction Since The Republic Has Sovereign Immunity And No Exception Applies**

    **1.** **The FSIA Is The Sole Basis For Establishing Subject-Matter Jurisdiction Over The Republic**

"The FSIA is 'the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" *Filler v. Hanvit Bank*, 378 F.3d 213, 216 (2d Cir. 2004) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). Under Section 1604 of the FSIA, a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604; *see also Kato v. Ishihara*, 360 F.3d 106, 107-08 (2d Cir. 2004) (under FSIA, "foreign sovereigns . . . enjoy immunity from suit in United States courts, subject to a few, enumerated statutory exceptions.") (internal quotation marks and citations omitted); *see also Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 196 (2d Cir. 2016) (only if the action in which foreign state is a defendant falls within an exception enumerated in the FSIA "will jurisdiction lie").

Since there is no dispute that the Republic is a foreign sovereign, JA-400, "the burden then shifts to the plaintiff to show that a FSIA-enumerated exception to sovereign immunity applies." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*, 600 F.3d 171, 175 (2d Cir. 2010) (citation omitted). Preble-Rish did not and cannot meet that burden.

## 2.    No Exception To The Republic's Immunity Applies

The Petition does not allege the existence of subject matter jurisdiction under the FSIA,  Indeed, it does not even mention the FSIA much less allege that any exception to immunity applies.  JA-50.  No exception applies, including the arbitration exception.

The FSIA creates an exception to immunity where the action is brought to confirm an arbitration award made pursuant to "an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration" differences that may arise "with respect to a defined legal relationship, whether contractual or not[.]"  28 U.S.C. § 1605(a)(6).  The exception under Section 1605(a)(6) applies only where there is an arbitration agreement "made by the foreign state with . . . a private party."  28 U.S.C. § 1605(a)(6).

This Court has made clear that the "made by" requirement of Section 1605(a)(6) means what it says.  In *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42 (2d Cir. 2021), the Court concluded that a party receiving a direct benefit may not be said to have "made" the underlying contract under § 1605(a)(6) because "[w]hen Congress codified the arbitration exception, it specified that the exception applied only in the presence of an agreement 'made by the foreign state.'"  *Id*. at 67-68.  As the Court explained, "[a] contract can be said to be 'made by' only the parties to it."  *Id*. at 67-68 (quoting 28 U.S.C. § 1605(a)(6)).  The court in *TIG Insurance Co. v. Republic of Argentina*, No. 18-mc-00129 (DLF), 2022 WL 1154749, at *1, 7

(D.D.C. Apr. 18, 2022), reached the same conclusion, to uphold Argentina's sovereign immunity because the arbitration agreements were not "made by a foreign state," but instead by "a state-owned corporation created by Argentina in 1915." As the court in *TIG* explained, citing this Court's *Moldovagaz* decision:

> "Make," in the context of "make a contract," means "[t]o agree upon, and conclude or adopt, a contract[;] [i]n case of a written contract, to reduce it to writing, execute it in due form, and deliver it as binding." . . . On its face, the past participial phrase "made by" refers to the parties who reduced the arbitration agreement to writing, executed, and delivered it at the time of formation—*i.e.*, the point at which that agreement was "made." *See* 28 U.S.C § 1605(a)(6). In that respect, the FSIA's exception can apply only to the parties that formed or "made" the agreement, *see Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68 (2d Cir. 2021) (noting that "[a] contract can be said to be 'made by' only the parties to it"), and therefore cannot apply to parties that merely obtained liability under it.

*TIG*, 2022 WL 1154749, at *7.

Under *Moldovagaz* the arbitration agreement was not "made by" the Republic within the meaning of § 1605(a)(6) because the Republic is not a signatory or party to the Contracts between Preble-Rish and BMPAD. *See* JA-309 JA-345, JA-380 (signature pageshowing the two parties to the contracts, Preble-Rish and BMPAD). Thus, the arbitration exception is inapplicable.

Since the district court did not consider the Motion on the merits, it made no determination that any preclusion doctrine supposedly barred the Republic from arguing that the Amended Judgment was void for lack of subject matter jurisdiction. However, any such argument would lack merit for the reasons laid out

in the Republic's opening brief in its appeal in Docket No. 23-1096 (Doc. 92) (the "23-1096 Opening Brief"), being heard in tandem with this appeal, at pages 20-27. That brief is incorporated here by reference and the preclusion analysis applies equally here.

Under New York's transactional approach to res judicata, Justice Borrok's order denying Harris Bricken's petition to stay the arbitration has no preclusive effect on the Republic's argument for setting aside the Amended Judgment as void for lack of subject matter jurisdiction. That argument that could not have been raised in the Petition to Stay—since the Amended Judgment was not yet in existence—and arises from the district court's entry of judgment on the Partial Final Order, a different transaction or event than the event giving rise to the Petition to Stay, *i.e.*, the Arbitration Demand. As to collateral estoppel, the "actually litigated" and "full and fair opportunity" elements are missing for the reasons set forth in the 23-1096 Opening Appeal Brief.

### C. The Amended Judgment Is Also Void For Lack of Personal Jurisdiction, Since The Republic Was Never Served With The Petition

The district court should have vacated the Amended Judgment on the independent ground that it was void because the district court lacked personal jurisdiction over the Republic. It is undisputed that the only Certificate of Service filed by Preble-Rish in this action states that the Preble-Rish's sole effort to transmit the Notice of Petition, Petition and related papers upon the Republic was via fax

33

upon John McDonald, Esq., a lawyer with Harris Bricken who, as shown above never claimed in this action to be appearing on behalf of the Republic. JA-66-67. Faxing papers to a lawyer for a different party is not remotely compliant with the FSIA, and the Court therefore never acquired personal jurisdiction over the Republic.

### 1.    Strict Adherence To The FSIA's Service Requirements Is Required

The FAA, 9 U.S.C. § 9, does not provide a method of service for foreign parties not resident in any district.  Courts, however, including this Court, have concluded that a petition and motion to confirm an arbitration award in such circumstances must be served pursuant to Fed. R. Civ. P. 4.  *See Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1277 (2d Cir. 1971); *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 123 (2d Cir. 2012) (noting that Rule 4 applies in proceedings to confirm arbitration awards) (Straub, J., dissenting); *see also Technologists, Inc. v. Mir's Ltd*., 725 F. Supp. 2d 120, 126-27 (D.D.C. 2010) (holding that motion to vacate, correct, or modify an arbitration award must be served on foreign adverse party consistent with Rule 4; "the weight of authority supports application of Rule 4 to the service of a motion to vacate an arbitration award filed pursuant to 9 U.S.C. § 10") (citing cases).

Pursuant to Rule 4(j), "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."  Fed. R. Civ.

P. 4(j). Section 1608(a) "sets out in hierarchical order the following four methods by which '[s]ervice . . . shall be made,'" *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019):

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

"Courts have long held that section 1608(a), which governs service upon a foreign state, requires strict adherence to the FSIA's literal terms enumerated in Section 1608(a), not merely substantial compliance." *Lovati v. Bolivarian Republic*

35

*of Venez.*, No. 19-CV-4793 (ALC), 2020 WL 6647423, at \*2 (S.D.N.Y. Nov. 11, 2020); *see also Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 317 (D.D.C. 2022) ("The D.C. Circuit has explained that mere 'substantial compliance' with § 1608(a) is the same, for personal jurisdiction purposes, as not complying with § 1608(a) at all."); *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008) (citing cases).

### 2. Service By Fax On A Lawyer For A Different Party Does Not Constitute Proper Service Under Any Scenario

None of the foregoing provisions of 28 U.S.C. § 1608 permits service on a foreign sovereign to be effected by the serving party sending a fax to a lawyer for a party other than the sovereign. But the only service Preble-Rish claims to have made was to send its papers by fax to a lawyer with Harris Bricken. JA-66-67. As shown above, Harris Bricken represented BMPAD in the lower court, but never claimed to represent the Republic, and had not even appeared on behalf of BMPAD by the time Preble-Rish's counsel claims to have faxed the papers to Harris Bricken eight days after filing the Petition.

Even if the Contracts were deemed to contain a "special arrangement" for service, which they do not, *see* 23-1096 Opening Appeal Brief at 34-35, the only "arrangement" for transmitting "correspondence between the Parties" is that correspondence for BMPAD may be sent by email to BMPAD's Executive Director,

Mr. Ignace File Aimé Saint Fleur. JA-783-84. There is no provision for transmitting any documents, for service or otherwise, by fax to Harris Bricken.

"[P]ersonal jurisdiction under the FSIA equals subject matter jurisdiction plus valid service of process." *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000) (internal quotation marks omitted). Since there was no valid service of process on the Republic, the district court lacked personal jurisdiction and should have vacated the Amended Judgment as void under Rule 60(b)(4). *See also, e.g., Micula v. Government of Rom.*, 714 F. App'x. 18, 21 (2d Cir. 2017) (district court lacked personal jurisdiction over Romania based, among other things, upon improper service under the FSIA, and erred in declining to vacate its judgment enforcing arbitration award as void); *Mobil Cerro Negro, Ltd. v. Bolivarian Repub. Of Venezuela*, 863 F.3d 96, 124-25 (2d Cir. 2017) (because award creditor failed to satisfy FSIA's service requirement, district court lacked jurisdiction over foreign sovereign and judgment was void).

> **D.** **The District Court's Mistake Of Fact In Believing The Republic Appeared In The Case Led It To Enter The Amended Judgment Without Going Through The Default Judgment Process, Which Would Have Made Clear That No Judgment Could Be Entered**

The Republic is also entitled to relief from the Amended Judgment under Rule 60(b)(1) because the Court's mistaken view that the Republic appeared through BMPAD's counsel, Harris Bricken, led the Court to forego the default judgment

process, which process would have shown that the district court lacked subject-matter and personal jurisdiction over the Republic.

1. **The Republic Did Not Appear Through Harris Bricken, Which Never Held Itself Out As Representing The Republic In The Lower Court, And Was Never Retained By The Republic**

Harris Bricken's submissions in this case make clear it never held itself out as representing the Republic; the firm stated that it was representing only BMPAD.

For example, in Harris Bricken's August 23, 2021 memorandum of law in opposition to the Petition—its first filing in the lower court—the firm clearly states that the brief was filed on behalf of the "Respondent [singular], Haiti's Bureau [d]e Monétisation [d]e[s] Programmes d'Aide au D[é]veloppement." JA-148. Harris Bricken's signature block at the end of the brief similarly describes the firm as "Attorneys for Bureau [d]e Monétisation [d]e[s] Programmes [d]'[A]ide [a]u Développement." JA-171. The accompanying Declaration of John McDonald of Harris Brocken contains the same indication on the signature block. JA-71. Harris Bricken's November 4, 2021 letter to the Court providing an update on the state court proceedings stated that the firm represented BMPAD only: "We represent Respondent Republic of Haiti's Bureau [d]e Monétisation [d]e[s] Programmes [d]'[A]ide [a]u Développement." District Court Record, ECF Doc. 33.[3]

---

[3] As the Republic demonstrated through the supporting declaration of Minister of Economy and Finance Michel Patrick Boisvert, the Republic never retained Harris

**2.** **Since The Republic Did Not Appear Or Answer The Petition, The Court Should Have Required Preble-Rish To Seek A Default Judgment, Which Requires Proof Of Subject Matter and Personal Jurisdiction**

As a result, the district court should have treated the Republic as having failed to respond to the Petition, thereby requiring Preble-Rish to seek a default judgment against the Republic. *See, e.g., Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[W]hen a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment, see generally Fed. R. Civ. P. 55 . . . ."). To obtain a default judgment, Preble-Rish would have had to establish subject matter, personal jurisdiction, and "adequate service of process." *E.g., Frost & Miller, LLP v. Heaven's Way Inv. Tr.*, No. 21-cv-6648 (AT) (BCM), 2023 WL 3005530, at *9 (S.D.N.Y. Jan. 20, 2023). Specifically, under the district court's default judgment rules, to obtain a default judgment, Preble-Rish would have been required to submit an affidavit: (i) describing "the legal and factual basis for" the Court's subject-matter jurisdiction and the Court's personal jurisdiction over the Republic; and (ii) certifying that the Republic was properly served. Individual Practices of Judge Castel, I.3.H., and

https://www.nysd.uscourts.gov/sites/default/files/practice_documents/pkcDefaultJudgmentProcedure.pdf (default judgment procedures).

---

Bricken to represent it in the district court or in any other matter involving Preble-Rish. JA-402-03.

As shown above, Preble-Rish would have been unable to submit such an affidavit, since no subject matter jurisdiction, personal jurisdiction, or valid service of process existed. As a result, no judgment could have been entered against the Republic.

Finally, for all the same reasons set forth in this Point II, in the alternative the Court should direct the district court to amend the Amended Judgment, pursuant to Federal Rule of Civil Procedure 59(e), to remove the Republic as a party against which the Amended Judgment runs.

## **CONCLUSION**

For the foregoing reasons, the Court should reverse the Mootness Order, grant

the Republic's Post-Judgment Motion, vacate the Amended Judgment as against the

Republic, and grant such further relief as the Court deems appropriate.


Dated: November 9, 2023
        New York, New York

**MADSEN LAW P.C.**

By**:**   ___/s/ Bertrand Madsen_____
        Bertrand Madsen
1115 Broadway, 11th Floor
New York, N.Y. 10010
Tel.:  (212) 346-7744
Email: bmadsen@madsenlawpc.com


- and -

**SCHLAM STONE & DOLAN LLP**

By:  ___/s/ Elizabeth Wolstein_____
        Elizabeth Wolstein
        Samuel L. Butt
26 Broadway, 19th Floor
New York NY 10004
Tel.:  (212) 344-5400
Fax:  (212) 344-7677
Email: ewolstein@schlamstone.com
Email: sbutt@schlamstone.com

*Attorneys for Respondent-Appellant Republic
of Haiti*

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 9,446 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

__/s/ Elizabeth Wolstein_____
Elizabeth Wolstein

Dated: November 9, 2023

**i**

**SPECIAL APPENDIX
TABLE OF CONTENTS**

**Page**

Order of the Honorable P. Kevin Castel,
  filed July 20, 2023 ............................................... SPA-1

28 U.S.C. § 1604............................................. SPA-6

28 U.S.C. § 1605............................................. SPA-7

28 U.S.C. § 1608............................................. SPA-13

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PREBLE-RISH HAITI, S.A.,

                      Petitioner,

                                                   21-cv-6704 (PKC)
         -against-

                                                   ORDER

REPUBLIC OF HAITI, BUREAU DE
MONÉTISATION DES PROGRAMMES D'AIDE
AU DÉVELOPPEMENT,

                    Respondents.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

           Respondent Republic of Haiti ("ROH") moves under Rule 60(b), Fed. R. Civ. P.,

for relief from the judgment[1] of this Court confirming the Partial Final Award of an international

arbitration panel, or alternatively to amend or alter the judgment under Rule 59(e).  The

arbitration at issue arose out of a fuel contract dispute between ROH, and its agency Bureau de

Monétisation des Programmes d'Aide au Développement ("BMPAD"), and petitioner Preble-

Rish Haiti, S.A. ("PRH").  On June 29, 2023, the Court confirmed the Final Award of the

arbitration panel and issued an Order to Show Cause why the motion on the Partial Final Award

ought not be denied as moot.  (ECF 116.)[2]  Both PRH and ROH have submitted responses, and

the Court concludes that the motion will be dismissed as moot.

---

[1] ROH states it is seeking relief from two judgments, both an original judgment (ECF 49.) and an amended judgment
(ECF 56.).  (See, e.g., ECF 121 at 1 n.1.)  But, as discussed below, there is only one judgment on the Partial Final
Award in effect—the Court simply ordered the clerk to amend the original judgment to add language clarifying that
the original judgment was as against both BMPAD and ROH, rather than simply BMPAD.  (ECF 53.)
[2] Unless otherwise indicated, ECF citations refer to Docket 21-cv-6704 (PKC).

The Court assumes familiarity with the prior filings and the Court's Orders in this matter (21-cv-6704 (PKC)) and the related matters (21-cv-4960 (PKC), 21-cv-9040 (PKC), and 22-cv-7503 (PKC)).

The underlying dispute arises out of a series of fuel contracts between PRH, a fuel supplier, and BMPAD, the Haitian agency charged with ordering petroleum products on behalf of ROH.  (ECF 48 at 2.)  In three separate contracts, PRH agreed to source, ship, and deliver fuel for a fee, and the terms of the contracts called for PRH to make six monthly shipments.  (Id.) The first four fuel orders proceeded uneventfully, but BMPAD fell behind on payments on the fifth order.  (Id.)  Though payment had yet to be received, PRH continued with the sourcing and shipping process, sending reminders to BMPAD as the invoices became due and ships were loaded with BMPAD's fuel.  (Id.)  BMPAD acknowledged receipt of shipping documents for the Haiti-bound ships carrying the unpaid fuel and took possession of the fuel as the ships arrived in Haiti; however, payment was never sent to PRH.  (Id.)  Eventually, PRH halted all fuel shipments to BMPAD and alleged that BMPAD and ROH owed damages stemming from the unpaid invoices for fuel delivered, including lost profits.  (Id.)

Pursuant to arbitration clauses in the contracts, PRH served a notice demanding arbitration of its claims against ROH and BMPAD on November 20, 2020.  (Id. at 3.)  Relevant here, the subsequently constituted arbitration panel issued a Partial Final Award on August 6, 2021, granting "PRH's motion for partial pre-award security" and directing respondents to deposit $23,043,429.79 into an escrow account.  (ECF 5-1 ("Partial Final Award") ¶ 119.)  The award stated that "[t]he escrow deposit shall serve solely as pre-award security for PRH's claims in this arbitration, subject to the further orders of the Panel or the United States District Court for the Southern District of New York or the courts of the state of New York."  (Id.)

SPA-3

PRH petitioned this Court to confirm the Partial Final Award.  (ECF 8.)  On January 26, 2022, the Court confirmed the Partial Final Award and the Clerk entered judgment "as against BMPAD."  (ECF 48, 49.)  Shortly thereafter, the Court issued an Order (1) noting that in its January 26 Order, the term "BMPAD" was stated to be inclusive of both BMPAD and ROH, and (2) directing the Clerk to amend the judgment accordingly.  (ECF 53.)  The Clerk issued an Amended Judgment as against both ROH and BMPAD.  (ECF 56.)

After the confirmation of the Partial Final Award, attorneys from the firms of Madsen Law P.C. and Schlam Stone and Dolan LLP filed notices of appearance on behalf of ROH.  (ECF 58, 59, 60, & 61.)  ROH then filed the instant motion for relief from judgment pursuant to Rule 60(b), Fed. R. Civ. P., or, in the alternative, to alter or amend the judgment pursuant to Rule 59(e) to remove ROH as a judgment debtor.  (ECF 63.)

Concurrently, the arbitration continued to a hearing on the merits, and on August 23, 2022, the panel issued its Corrected Final Award ("Final Award").  (22-cv-7503, ECF 6-1.) The Final Award stated that "PRH is entitled to recover from Respondents ROH and BMPAD, and Respondents are jointly and severally liable for . . . $28,184,756.65."  (Final Award at p. 75.) PRH thereafter petitioned this Court to confirm the Final Award.  (22-cv-7503, ECF 1.)  ROH moved to dismiss the petition, or alternatively to vacate the Final Award, raising similar arguments to those urged in its motion for relief from, or alternatively to amend or alter, the judgment on the Partial Final Award.

On June 29, 2023, the Court issued an Opinion and Order (1) confirming the Final Award, and (2) ordering the parties to show cause why ROH's motion regarding the Partial Final Award judgment is not now moot.  (ECF 116.)  Both parties have submitted responses.

SPA-4

PRH agrees that the motion is now moot, echoing the reasons outlined in the Order of June 29, 2023.  (ECF 120.)  In that Order, the Court reasoned that the Partial Final Award was an "interim" measure aimed to protect a potential final award, and it simply required ROH and BMPAD to place "pre-award security" in escrow.  (ECF 116 at 25.)  Now that the Final Award has been confirmed, the question of a pre-award, interim measure is no longer live. (Id.)

The Partial Final Award was "an award of interim security."  (Partial Final Award ¶ 118.)  An "interim measure" is by its nature a "temporary" grant of relief "to preserve the status quo, help ensure the satisfaction of an eventual award, or otherwise protect the rights of one or more parties and promote the efficacy of an arbitration and the resulting award." Restatement of the Law, The U.S. Law of International Commercial and Investor-State Arbitration § 1.1(t) (Am. L. Inst. 2023) (defining "interim measure"); accord U.N. Comm'n on Int'l Trade L., UNCITRAL Model Law on International Commercial Arbitration, art. 17(2) (1985, as amended in 2006) (defining "interim measure" as a "temporary" measure, taking "the form of an award or in another form," issued "prior to the issuance of the award by which the dispute is finally decided" and where "the arbitral tribunal orders a party to . . . [m]aintain or restore the status quo pending determination of the dispute . . . [or] [p]rovide a means of preserving assets out of which a subsequent award may be satisfied").  The Partial Final Award itself is explicit that payment was to be made to either a bank agreed upon by the parties or a "an independent escrow agent"—not PRH—and any deposited funds were to "serve solely as pre-award security for PRH's claims."  (Partial Final Award ¶ 119.)  Accordingly, the Partial Final Award judgment exists only as temporary relief to secure future payment of the Final Award,

SPA-5

and is not, as ROH suggests, a wholly separate and independent liability it will have a continuing obligation to pay.

          To the extent that ROH fears it will be subject to enforcement efforts that exceed the total amount of the Final Award judgment, this fear is misplaced.  PRH concedes that the Partial Final Award judgment simply directed respondents to post security and that respondents' present obligation is to pay the damages outlined in the Final Award.  (ECF 120 at 3, 5.) Additionally, the text of the Final Judgment on the Final Award makes clear that funds secured through the Partial Final Award—and actually paid to PRH—shall be applied toward satisfaction of that Judgment.  (22-cv-7503, ECF 58.)

          In accordance with the foregoing, the motion for relief from judgment pursuant to Rule 60(b), Fed. R. Civ. P., or, in the alternative, to alter or amend the judgment pursuant to Rule 59(e) is DENIED.

          SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
       July 20, 2023

5

SPA-6

United States Code Annotated
 Title 28. Judiciary and Judicial Procedure (Refs & Annos)
  Part IV. Jurisdiction and Venue (Refs & Annos)
   Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1604

§ 1604. Immunity of a foreign state from jurisdiction

Currentness

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

**CREDIT(S)**

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2892.)

Notes of Decisions (165)

28 U.S.C.A. § 1604, 28 USCA § 1604
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

End of Document          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   1

SPA-7

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1605

§ 1605. General exceptions to the jurisdictional immunity of a foreign state

Effective: December 16, 2016

Currentness

**(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

**(1)** in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

**(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

**(3)** in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

**(4)** in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

**(5)** not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--

**(A)** any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function

regardless of whether the discretion be abused, or

**(B)** any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

**(6)** in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

**(b)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That--

**(1)** notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

**(2)** notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

**(c)** Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

**(d)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to

§ 1605. General exceptions to the jurisdictional immunity of a..., 28 USCA § 1605

foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

[(e), (f) Repealed. Pub.L. 110-181, Div. A, Title X, § 1083(b)(1)(B), Jan. 28, 2008, 122 Stat. 341.]

**(g) Limitation on discovery.--**

**(1) In general.--(A)** Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for section 1605A or section 1605B, the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

**(B)** A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

**(2) Sunset.--(A)** Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

**(B)** After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would--

**(i)** create a serious threat of death or serious bodily injury to any person;

**(ii)** adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

**(iii)** obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

Case 23-1095, Document 46, 11/09/2023, 3589022, Page60 of 65

**(3) Evaluation of evidence.**--The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

**(4) Bar on motions to dismiss.**--A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

**(5) Construction.**--Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

**(h) Jurisdictional immunity for certain art exhibition activities.**--

**(1) In general.**--If--

**(A)** a work is imported into the United States from any foreign state pursuant to an agreement that provides for the temporary exhibition or display of such work entered into between a foreign state that is the owner or custodian of such work and the United States or one or more cultural or educational institutions within the United States;

**(B)** the President, or the President's designee, has determined, in accordance with subsection (a) of Public Law 89-259 (22 U.S.C. 2459(a)), that such work is of cultural significance and the temporary exhibition or display of such work is in the national interest; and

**(C)** the notice thereof has been published in accordance with subsection (a) of Public Law 89-259 (22 U.S.C. 2459(a)),

any activity in the United States of such foreign state, or of any carrier, that is associated with the temporary exhibition or display of such work shall not be considered to be commercial activity by such foreign state for purposes of subsection (a)(3).

**(2) Exceptions.**--

**(A) Nazi-era claims.**--Paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and--

**(i)** the property at issue is the work described in paragraph (1);

Case 23-1095, Document 46, 11/09/2023, 3589022, Page61 of 65

**(ii)** the action is based upon a claim that such work was taken in connection with the acts of a covered government during the covered period;

**(iii)** the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and

**(iv)** a determination under clause (iii) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

**(B) Other culturally significant works.**--In addition to cases exempted under subparagraph (A), paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and--

**(i)** the property at issue is the work described in paragraph (1);

**(ii)** the action is based upon a claim that such work was taken in connection with the acts of a foreign government as part of a systematic campaign of coercive confiscation or misappropriation of works from members of a targeted and vulnerable group;

**(iii)** the taking occurred after 1900;

**(iv)** the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and

**(v)** a determination under clause (iv) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

**(3) Definitions.**--For purposes of this subsection--

**(A)** the term "work" means a work of art or other object of cultural significance;

**(B)** the term "covered government" means--

**(i)** the Government of Germany during the covered period;

**(ii)** any government in any area in Europe that was occupied by the military forces of the Government of Germany during the covered period;

**(iii)** any government in Europe that was established with the assistance or cooperation of the Government of Germany during the covered period; and

**(iv)** any government in Europe that was an ally of the Government of Germany during the covered period; and

**(C)** the term "covered period" means the period beginning on January 30, 1933, and ending on May 8, 1945.

## CREDIT(S)

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2892; amended Pub.L. 100-640, § 1, Nov. 9, 1988, 102 Stat. 3333; Pub.L. 100-669, § 2, Nov. 16, 1988, 102 Stat. 3969; Pub.L. 101-650, Title III, § 325(b)(8), Dec. 1, 1990, 104 Stat. 5121; Pub.L. 104-132, Title II, § 221(a), Apr. 24, 1996, 110 Stat. 1241; Pub.L. 105-11, Apr. 25, 1997, 111 Stat. 22; Pub.L. 107-77, Title VI, § 626(c), Nov. 28, 2001, 115 Stat. 803; Pub.L. 107-117, Div. B, § 208, Jan. 10, 2002, 115 Stat. 2299; Pub.L. 109-304, § 17(f)(2), Oct. 6, 2006, 120 Stat. 1708; Pub.L. 110-181, Title X, § 1083(b)(1), Jan. 28, 2008, 122 Stat. 341; Pub.L. 114-222, § 3(b)(2), Sept. 28, 2016, 130 Stat. 853; Pub.L. 114-319, § 2(a), Dec. 16, 2016, 130 Stat. 1618.)

Notes of Decisions (1172)

28 U.S.C.A. § 1605, 28 USCA § 1605
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

§ 1608. Service; time to answer; default, 28 USCA § 1608

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1608

§ 1608. Service; time to answer; default

Currentness

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

SPA-14

**(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

**(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

**(3)** if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--

**(A)** as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

**(B)** by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

**(C)** as directed by order of the court consistent with the law of the place where service is to be made.

**(c)** Service shall be deemed to have been made--

**(1)** in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

**(2)** in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

**(d)** In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

**(e)** No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

§ 1608. Service; time to answer; default, 28 USCA § 1608

**CREDIT(S)**

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2894.)

Notes of Decisions (300)

28 U.S.C.A. § 1608, 28 USCA § 1608
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

End of Document                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.